**GLENDALE FEDERAL BANK, FSB, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 90–772C.**

United States Court of Federal Claims.

Feb. 4, 1993.

Jerry Stouck, Washington, DC, with whom was Joe G. Hollingsworth, Donald Fowler, and Charles Fromm, for plaintiff. Richard Fink, Gen. Counsel for Glendale Federal Bank, FSB, of counsel.

Patricia Leitner, Washington, DC, with whom was Anne L. Weismann, Asst. Branch Director, Federal Programs Branch, Dept. of Justice, and Stuart M. Gerson, Asst. Atty. Gen., for defendant. Chris Willard, Office of Thrift Supervision, of counsel.

## ORDER

SMITH, Chief Judge.

At the status conference held February 2, 1993, plaintiff, Glendale Federal Bank, FSB, (Glendale), presented the court with a unique and serious concern. Glendale alleges that unless the judicial system grants it the relief it believes it is entitled to by June 30, 1993, the date on which it will be out of capital compliance with FIRREA [1], plaintiff could be put into receivership by the Office of Thrift Supervision (OTS) and liquidated by the Resolution Trust Company (RTC) at a cost of $4–5 billion to the taxpayers. This could occur even if Glendale prevails on its legal claims in the courts. This might well be in addition to the monetary recovery to Glendale or its shareholders which plaintiff estimates to be between $1.4 and $1.9 billion.

The potential for such massive economic waste stems from the generally effective structure of our court system and the unique posture of this case. On July 24, 1992, this court found the government liable to Glendale for breaching a contract to allow plaintiff to use supervisory goodwill as a capital asset amortized over specific periods of time. *Statesman Savings Holding Corp., et al., and Glendale Federal Bank, FSB v. United States,* 26 Cl.Ct. 904 (1992). The effect of this breach has allegedly cost Glendale $1.4 billion. In addition, Glendale alleges that its restitutionary recovery would be $1.9 billion. The government's breach could also cost the institution its existence, and the taxpayers an additional $4–5 billion in liquidation costs.

In light of the complex damages issues to be dealt with in this case (and almost 40 similar, but factually unique cases) and because of the novelty and importance of the legal issues involved, the court felt bound to certify the liability issue for an immediate appeal. *Id.* at 923–24. The subsequent filing of numerous related cases has only

---

**1.** Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (Aug. 9, 1989). FIRREA is codified at various sections of Title 12 of the United States Code.

confirmed this decision to certify. The United States Court of Appeals for the Federal Circuit has moved swiftly on this issue of major consequence. However, due to the huge amount at stake in these cases, and the complexity of the issues, further appeal or petition for a writ of certiorari to the United States Supreme Court would be the normal and expected course of this litigation in light of almost any conceivable decision by the Court of Appeals.

The damage phase of this case also involves novel and complex issues which would likely require an extended trial. Even if such a trial were begun today, a final determination of the case would almost certainly not be issued by the judicial system before June 30, 1993. Plaintiff contends this may well be too late for Glendale or the taxpayers.[2] The court notes that this is only the plaintiff's view. However, since the plaintiff has prevailed in this court, and the potential damages in this case are clearly enormous, Glendale's view must be taken very seriously. If the plaintiff's view is ultimately held to be correct, the consequence of post-June 30, 1993 legal relief would be an historic legal irony of unparalleled cost and waste.

Injunctive relief preserving the status quo would undoubtedly solve this problem. However, the statutory scheme and this court's limited injunctive powers are inadequate to enjoin OTS from placing Glendale into an RTC receivership after June 30, 1993 when the liability issue will still not be resolved. *Security Savings & Loan Ass'n v. United States*, 26 Cl.Ct. at 1004; *aff'd* No. 92–5175, slip op. at 7, 983 F.2d 1085 (Fed.Cir. October 14, 1992).

As a result of our status conference, the court calls upon the parties to do several things that might reduce the potential for such massive waste:

1. Jointly explore the possibility of a voluntary agreement to avoid any receivership until Glendale's potential claim is either reduced to a final judgment or finally rejected.

2. Meet by February 12, 1993 to see if some efficient and relatively inexpensive method can be found to stipulate a specific amount plaintiff would recover, should its position on liability ultimately prevail. If a procedure for arriving at a single figure cannot be agreed upon, a method for arriving at a range of figures, based upon various legal assumptions, would be a worthy goal. Such meetings should include the range of experts needed to develop a potential stipulation, be they accountants, economists, management officials, etc., in addition to the highly competent lawyers involved here. The court believes very strongly that the high stakes for everyone in this case justify such an effort.

3. Report the outcome of such meetings to the court at the status conference scheduled February 17, 1993 at 3:30 p.m. E.S.T. The status conference will be held in Courtroom 4, National Courts Building, 717 Madison Place N.W., Washington, D.C. 20005.

A court has no power to order parties to settle either the whole case or even certain issues. Either party has the ability to insist on all its procedural rights, and properly so. If this case is somewhat unique, its uniqueness argues for even greater care in the formal judicial process. It would also be contrary to the fair and efficient administration of justice to require the defendant to go forward with formal or quasi-formal litigative processes while liability must still be finally determined. However, a very

---

**2.** A similar quandary was presented in *Security Savings & Loan Ass'n v. United States*, 26 Cl.Ct. 1000 (1992). In that case, plaintiff sought injunctive relief to prevent its imminent takeover by the OTS. The court found the plaintiff's arguments cogent and especially compelling because as soon as it took over as receiver, "the government [would] then have no desire to litigate against itself the potential claim plaintiff asserts based upon this court's decision in *Winstar v. United States*, 25 Cl.Ct. 541 (1992)." 26 Cl.Ct. at 1002. On October 16, 1992, one month after the court issued its opinion, Security Savings was put into receivership. In this case, of course, receivership presents the additional problem of enormous liquidation costs to be borne by the taxpayers.

real problem exists which may threaten the ability of our legal system to resolve this case rationally and justly. Therefore, the court strongly suggests that the parties and their clients make every effort to insure the resolution of the damage issues by means short of formal litigation and in a time frame consistent with the requirements of justice.

IT IS SO ORDERED.